**NOT FOR PUBLICATION**                                                            **CLOSED**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ROY DEPACK, | Civil Action No. 07-1620(FSH) |
| Petitioner, | |
| v. | **OPINION** |
| UNITED STATES OF AMERICA, | February 5, 2008 |
| Respondent. | |

This matter comes before the Court upon Roy DePack's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

**I.      Facts and Procedural History**

On August 26, 2004, a federal grand jury indicted Roy DePack ("DePack") on four counts. Counts One and Two charged DePack with committing and attempting to commit bank fraud in violation of 18 U.S.C. § 1344. Count Three charged DePack with making approximately $3,120 in counterfeit Federal Reserve Notes ("Notes") in violation of 18 U.S.C. § 471. Count Four charged DePack with attempting to sell counterfeit Notes in violation of 18 § U.S.C. 472. On March 2, 2005, DePack pleaded guilty to all four counts of the indictment.

In the events leading up to DePack's conviction, federal agents searched an apartment, which the United States ("the Government") contended DePack had abandoned. DePack's aunt, Carol Potbutkiewicz ("Potbutkiewicz"), testified that she had rented the apartment to DePack in or about November 2002, but that he had failed to pay the rent for December 2002, and had since

not returned to the residence.  Potbutkiewicz also testified that after a number of failed attempts to reach DePack, she had locked him out of the residence and eventually removed his clothes from the apartment.  Although the search was conducted without a warrant, the federal agents obtained written consent from Potbutkiewicz prior to entering the apartment.  From the apartment, the federal agents seized counterfeit Notes, counterfeit making devices and equipment, and evidence of DePack's bank fraud offenses.

   After his indictment, DePack filed a motion to suppress all evidence seized from the apartment in a claim that the warrantless search violated his Fourth Amendment rights under the United States Constitution.  On February 2, 2005, the Court held an evidentiary suppression hearing in which DePack, Special Agent Hazel Cerra of the United States Secret Service ("Special Agent Cerra"), and Potbutkiewicz testified.  Special Agent Cerra testified that Potbutkiewicz identified herself as the owner of the residence and that Potbutkiewicz told the agents that she had rented the upstairs portion of the residence (the apartment) to DePack around November 2002.  Potbutkiewicz also testified that she had rented the apartment to DePack.  Potbutkiewicz further testified that she gave the federal agents consent to search the upstairs portion of the residence and that, before she signed the consent to search, she told the agents that she owned the residence.  The Court denied DePack's suppression motion, finding that Potbutkiewicz consented to the warrantless search and seizure, and that the federal agents reasonably believed she had the authority to provide consent.

   On March 2, 2005, DePack entered a plea agreement with the Government.  In his plea agreement, DePack stipulated that Counts One and Two of the Indictment involve losses totaling approximately $117,000; that he manufactured and produced approximately $3,120 worth of

2

counterfeit Notes; and that he possessed and had custody and control over a counterfeiting device and other materials used for counterfeiting. Additionally, the plea agreement contained a waiver of certain appellate rights, stating that if the factual stipulations described above were accepted by the sentencing court, "both parties [would] waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so."

During his hearing under Rule 11 of the Federal Rules of Criminal Procedure, DePack made a number of statements to the Court while under oath. In his statements, DePack affirmed that he was satisfied with the way in which his counsel had represented him, that he had entered into the guilty plea of his own free will, that he had gone over every line of the plea agreement with his counsel and asked counsel any questions he had about it, and that he understood the legal ramifications of pleading guilty. DePack stated his understanding that pleading guilty waived appellate and post-conviction rights in certain circumstances. DePack also signed an Application for Permission to Enter a Plea of Guilty.

On September 16, 2005, at Petitioner's request, the Court appointed him new counsel, Henry Klingeman, and three days later, DePack's prior counsel, Federal Public Defender Peter Carter, was terminated. On January 31, 2006, DePack filed a second motion to withdraw his guilty plea.[1] On February 7, 2006, the Court conducted a hearing to establish whether DePack

---

[1]The somewhat complicated procedural history of DePack's withdrawal motion is as follows:
- On December 30, 2005, DePack filed his first motion to withdraw his guilty plea.
- On January 18, 2006, the Court held a status conference as to DePack's motion.
- On January 20, 2006, DePack withdrew his motion to withdraw the guilty plea.
- On January 31, 2006, DePack filed a second motion to withdraw his guilty plea.
- On February 3, 2006, the Government filed a brief in response to DePack's motion.
- On February 7, 2006, the Court conducted a hearing pursuant to Federal Rule of Criminal Procedure 32(e) and denied DePack's motion.

had met his burden of demonstrating a "fair and just reason" for the withdrawal of the guilty plea pursuant to Federal Rule of Criminal Procedure 32(e). DePack claimed he was innocent, explaining that he was "forced into doing it" because of a gambling problem, even though he admitted to committing the crimes with which he was charged.

After hearing DePack's testimony, the testimony of his former counsel, and arguments by his counsel, the Court denied DePack's motion to withdraw his guilty plea. The Court then sentenced DePack to seventy months imprisonment.

Thereafter, on February 10, 2006, DePack filed a timely notice of appeal to the United States Court of Appeals for the Third Circuit, which affirmed DePack's conviction and sentence on February 20, 2007. In its holding, the Third Circuit found that DePack knowingly and voluntarily entered into his plea and that DePack did not meaningfully assert his innocence because he acknowledged that he was guilty of the charges. Additionally, the Third Circuit held that, by pleading guilty, DePack had waived his right to contest the Court's denial of his suppression motion. The Third Circuit declined to review DePack's ineffective assistance of counsel claims, relying upon its precedent that it is preferable to review such claims on collateral attack. On April 5, 2007, DePack filed a pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 and also requested that the Court appoint him a third Court-appointed attorney.

**II.    Legal Standard**

Pursuant to 28 U.S.C. § 2255, a federal prisoner in custody "under sentence of a court . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Grounds for bringing a Section 2255 motion are that: (1) the sentence was imposed in violation

4

of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the imposed sentence was in excess of the maximum authorized by the law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; see also Hill v. United States, 368 U.S. 424, 426-27 (1962). Section 2255 is intended to remedy only "fundamental defect[s] which inherently result[] in a complete miscarriage of justice" or "omission[s] inconsistent with the rudimentary demands of fair procedure." Hill, 368 U.S. at 428. Thus, the grounds for collateral attacks on final judgments are "narrowly limit[ed]," so that "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." United States v. Addonizio, 442 U.S. 178, 184 (1979), superseded on other grounds by statute.

Where a prisoner has failed to raise a claim at sentencing and on direct appeal, the prisoner may not obtain collateral review for that claim unless he meets his burden under the cause and actual prejudice standard. United States v. Frady, 456 U.S. 152, 167-68 (1982); see also United States v. Essig, 10 F.3d 968, 979 (3d Cir. 1993). Under this standard, the prisoner "must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Frady, 456 U.S. at 168.

To show that cause existed for his double procedural default, a prisoner must show that "some objective factor external to the defense impeded counsel's efforts to raise the claim." United States v. Pelullo, 399 F.3d 197, 223 (3d Cir. 2005) (quoting McCleskey v. Zant, 499 U.S. 467, 493 (1991)). "It is now well established that a successful claim of ineffective assistance of counsel under Strickland v. Washington . . . satisfies the 'cause' prong of a procedural default inquiry." United States v. Garth, 188 F.3d 99, 107 (3d Cir. 1999). All of DePack's claims in his

5

Section 2255 motion are being raised for the first time, and each alleges ineffective assistance of counsel.

Under the two-prong test established in Strickland v. Washington for evaluating ineffective assistance of counsel claims, the petitioner has the burden of showing (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. 466 U.S. 668, 687 (1984). To show that his counsel's performance was deficient, the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To show prejudice, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Finally, § 2255 provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," a court must "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." However, the prisoner is not entitled to a hearing "if his allegations [are] contradicted conclusively by the record, or if the allegations [are] patently frivolous." Solis v. United States, 252 F.3d 289, 295 (3d Cir. 2001); see also 28 U.S.C. § 2255.

**III.     Discussion**

*1) Validity of Plea Agreement*

DePack claims that the plea agreement was invalid because he signed the agreement ten days after its stated expiration date. DePack did not raise this issue on direct appeal allegedly

6

because he "did not realize that the plea had been signed after [its] expiration." DePack argues that his counsel should have discovered this defect and moved to withdraw the plea on the ground that the plea agreement was a nullity and not binding on DePack. In support, DePack relies on the common law proposition that an offer that specifies a period of time for its duration terminates upon the lapse of time specified.

  The Government contends that DePack waived any claim that his plea agreement was invalid. Not only did DePack fail to raise the claim during his Rule 11 hearing, but he also asserted during the hearing that he understood the agreement and had entered into it with free will. Furthermore, DePack did not raise the claim during his motion to withdraw the plea, although he could have done so in the affidavit he submitted (through new counsel) in support of his motion to withdraw and when testifying at the February 7, 2006 hearing. Finally, DePack failed a third time to raise this issue on direct appeal to the Third Circuit. As to DePack's claim that he did not realize the plea agreement had expired until after the appeal was denied, the Government responds that during his Rule 11 hearing, DePack affirmed that he had "in fact review[ed] every line of the plea agreement with Federal Public Defender Peter Carter," his former attorney.

  Because DePack has repeatedly failed to raise the claim, DePack has waived the right to collaterally attack his conviction and sentence on this ground. It is clear that DePack has procedurally defaulted on the claim that the plea agreement was invalid, as he failed to raise it both during sentencing and on direct appeal. DePack cannot show cause nor actual prejudice for failing to raise it.

The Court finds no merit in DePack's ineffective assistance claim as his "cause" for the double procedural default because DePack's counsel had no legal basis to challenge the validity of the plea agreement.  A plea agreement is analyzed under contract law standards.  <u>United States v. Moscahlaidis</u>, 868 F.2d 1357, 1361 (3d Cir. 1989).  One standard of contract law is that "an untimely attempt to accept [an offer] normally constitutes a counter offer which would shift the power of acceptance to the original offeror."  <u>Houston Dairy v. John Hancock Mut. Life Ins. Co.</u>, 643 F.2d 1185, 1186 (5th Cir. 1981) (citing 1 Corbin, <u>Contracts</u> § 74 (1963)); <u>Restatement (Second) of Contracts</u>, § 70 (1979) ("A . . . defective acceptance may be effective as an offer to the original offeror . . . ."); Farnsworth, <u>Contracts</u>, § 3.19 at 155 (1982) ("An acceptance that is not made until after the offer has lapsed may be treated by the original offeror as a counteroffer and may be accepted by him").  Thus, when DePack signed the plea agreement after the stated expiration date, his untimely attempt to accept constituted a counteroffer, which the Government clearly accepted.  DePack's counsel was not deficient for failing to contest the validity of the plea agreement.  It is clear that DePack wished to plead guilty at the time of his guilty plea and thus his "offer" to plead was "accepted."

*2) Denial of Motion to Withdraw Guilty Plea*

DePack claims that the Court erred by not allowing him to withdraw his guilty plea.  Specifically, DePack asserts that the Court should have "scrutinized the plea agreement" and recognized that it was no longer valid.  This is patently frivolous and is denied.

In the absence of certain factors,[2] "a section 2255 petitioner may not relitigate issues that were adjudicated at his original trial and on direct appeal." United States v. Palumbo, 608 F.2d 529, 533 (3d Cir. 1979); see also United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993). DePack moved to withdraw his guilty plea both during sentencing and on direct appeal. Both times, his motion was denied. None of the Palumbo factors is applicable, and in light of its finding that the plea agreement was not invalid, it will decline from reconsidering DePack's motion to withdraw his guilty plea

*3) Ownership of Apartment Searched*

DePack claims that his counsel was ineffective for failing to investigate the ownership of the apartment that the federal agents searched. DePack argues that since Potbutkiewicz was not the true owner of the building, she did not have the authority to consent to the search. Also, DePack claims that he "would have never pled [sic] guilty had he known that he was waiving his right to Appeal the illegal search and seizure issue." Thus, DePack maintains that his counsel was ineffective for failing to advise him that by pleading guilty he waived his right to appeal the search and seizure. DePack has shown no indication that he would have not pleaded guilty if his counsel had tried to establish that Potbutkiewicz did not own the apartment.

A warrantless search is constitutionally valid if based on the consent of a third party whom government agents reasonably believe possesses common authority over the premises, even if that

---

[2] The Third Circuit in Palumbo delineated the following factors: (1) newly discovered evidence that could not reasonably have been presented at the original trial; (2) a change in applicable law; (3) incompetent prior representation by counsel; or (4) other circumstances indicating that an accused did not receive full and fair consideration of his federal constitutional and statutory claims. 608 F.2d at 533.

person does not have such authority. See Illinois v. Rodriguez, 497 U.S. 177, 188-89 (1990). At the evidentiary suppression hearing, Potbutkiewicz testified that, before giving her written consent to the search, she identified herself as the owner of the apartment and informed the federal agents that she had rented the apartment to DePack. His several appointed attorneys never raised this issue because it was legally fruitless based on the agents' reasonable belief of Potbutkiewicz. There was no Strickland violation in DePack's counsel's choice not to investigate ownership; and no reasonable bases under the law to contend that her control of the apartment as the landlady was affected by the status of her legal ownership of the premises. DePack's guilty plea was knowing, voluntary, and intelligent, and he thus waived his right to assert a constitutional violation preceding the entering of the guilty plea based on illegal search and seizure. See Tollett v. Henderson, 411 U.S. 258, 267 (1973); see also United States v. Palmer, 574 F.2d 164, 167 (3d Cir. 1978). Therefore, DePack is not entitled to relief on this ground.

*4) Sentencing Guideline Application*

DePack argues that the counterfeit Notes were so "obviously counterfeit" that the two level upward adjustment under U.S.S.G. § 2B5.1(b)(2)(A)[3] should not have been applied. According to DePack, this Court should have, *sua sponte*, examined the counterfeit Notes at the sentencing to determine whether the two-level enhancement was appropriate even if neither side raised any issue and the matter had been stipulated between the prosecutor and defense counsel.

---

[3] U.S.S.G. § 2B5.1(b)(2)(A) states that if the defendant "manufactured or produced any counterfeit obligation or security of the United States, or possessed or had custody or control over a counterfeiting device or materials used for counterfeiting . . . increase by 2 levels." However, Application Note 4 to section 2B5.1 states that "[s]ubsection (b)(2)(A) does not apply to persons who produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny."

DePack also claims that his counsel was ineffective for failing to object to the two-level enhancement despite the stipulation entered into that covered the very same guideline provision, and to which DePack agreed at the time of his plea.

DePack stipulated to the two-level enhancement in the plea agreement and waived his right to collaterally attack the stipulation. In the plea agreement, DePack stipulated that he "possessed and had custody and control over a counterfeiting device and materials used for counterfeiting," a quote taken directly from the pertinent guideline, 2B5.1(b)(2)(A). Further, DePack stipulated that if the sentencing court accepted this stipulation, he waived the right to file a collateral attack "claiming that the sentencing court erred in doing so." DePack testified that he understood the factual stipulations set forth in the plea agreement and that he was waiving certain appellate rights as set forth in the agreement. Moreover, DePack did not challenge the upward adjustment at the sentencing.

The sentencing enhancement, U.S.S.G. § 2B5.1(b)(2)(A), provides that if the defendant "possessed or had custody or control over a counterfeiting device or materials used for counterfeiting . . . increase by 2 levels." When DePack stipulated that he "possessed and had custody and control over a counterfeiting device and materials used for counterfeiting," he effectively stipulated that the two-level enhancement was appropriate in this case. The stipulation he signed precisely tracks the language of the sentencing enhancement. The Application Note he now cites is simply an instruction not to apply § 2B5.1(b)(2)(A) in certain circumstances. By agreeing to the stipulation that § 2B5.1(b)(2)(A) applies, counsel need not specifically add language explicitly stating that he has considered the various Application Notes and concluded that they do not support an argument that § 2B5.1 should not be stipulated. By

11

signing the stipulation, counsel and client were in essence stipulating that there was no factual basis to negate the application of § 2B5.1(b)(2)(A).

DePack has thus waived his right to file a collateral attack claiming either that the Court erred in accepting his stipulation, or that counsel was ineffective in permitting him to sign it. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  DePack has not overcome the strong presumption that his counsel's performance in agreeing to the stipulation was reasonable.

*VI. Breach of Plea Agreement*

In his Reply to the Government's Answer, DePack claims, for the first time, that his counsel was ineffective for failing to object to the Government's alleged breach of the plea agreement.  Specifically, DePack claims that the Government breached the plea agreement by persuading the U.S. Probation Office to group the monetary losses resulting from his bank fraud and counterfeiting offenses of conviction as a single group instead of multiple groups.  DePack procedurally defaulted on this claim by failing to raise it at sentencing and on direct appeal.  Thus, he must demonstrate ineffective assistance to excuse his double procedural default.

In the draft Presentence Report, the Probation Office treated the losses resulting from the bank fraud offenses and counterfeit offenses as separate units for purposes of determining DePack's total offense level.  The Government objected and argued that the offenses should be grouped together under U.S.S.G. § 3D1.2 because these offenses involve substantially the same harm.  The Probation Office concurred with the Government's grouping analysis and amended its PSR.

In support of his position, DePack relies on <u>United States v. Rivera</u>, where the Third Circuit found that the government breached a plea agreement by arguing for a higher total offense level than that which was stipulated in the plea agreement. 357 F.3d 290, 295 (3d Cir. 2004). DePack argues that the Government has breached his plea agreement by stipulating to a certain loss amount and then arguing for a higher amount. He also emphasizes the language in <u>Rivera</u> that "to the extent there is ambiguity caused by a 'little bit of poor draftsmanship' conceded by the prosecutor, [the court] must construe the agreement against the government as drafter." <u>Id.</u> (quoting <u>United States v. Baird</u>, 218 F.3d 221, 229 (3d Cir. 2000)).

The Government counters that it has not breached the plea agreement because the agreement did not stipulate to any particular loss amount or grouping analysis. The Government argues that the agreement does not indicate: (1) that DePack's total loss amount would be limited to $117,940.08; (2) that the bank fraud and counterfeiting offenses would be grouped separately; or (3) that the parties stipulated to any particular adjusted or total offense level. The Government distinguishes this case from <u>Rivera</u>, in that the parties did not stipulate to any particular offense level and then seek the imposition of a higher offense level at sentencing. Finally, the Government claims that DePack was on notice of the Government's position on grouping when, during his motion to withdraw the guilty plea, he relied upon a prior version of the plea agreement stipulating that the offenses be grouped together. Thus, the Government maintains that it was free to advocate that the offenses should be grouped together and DePack's counsel was free to argue against such grouping. DePack's counsel did negotiate that stipulation away when the earlier plea

agreement was amended, and by so doing, he preserved the option to argue for a grouping analysis different from that of the Government.[4]

DePack's argument regarding breach of the plea agreement lacks merit. A plea agreement is analyzed under contract law standards. Moscahlaidis, 868 F.2d at 1361. Courts are compelled to scrutinize such agreements closely. United States v. Nolan-Cooper, 155 F.3d 221, 236 (3d Cir. 1998) (citing United States v. Hayes, 946 F.2d 230, 233 (3d Cir. 1991)). The Third Circuit has a three-step analysis for determining whether the government has breached a plea agreement: (1) what are the terms of the plea agreement and the conduct of the government; (2) whether the conduct of the government violated the terms of the agreement; and (3) what is the appropriate remedy if the court concludes that a violation occurred. Moscahlaidis, 868 F.2d at 1360. In analyzing the second step, the court should determine "whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty." United States v. Badaracco, 954 F.2d 928, 939 (3d Cir. 1992) (quoting United States v. Nelson, 837 F.2d 1519, 1521-22 (11th Cir. 1988)).

Under the terms of the plea agreement, the Government and DePack stipulated that the bank fraud offenses involved losses totaling approximately $117,000. However, this stipulation did not limit the total loss amount, did not stipulate that the bank fraud and counterfeiting offenses would be grouped together or separately, and did not stipulate to any particular adjusted or total offense level. Thus, both the Government and DePack were free to advocate their respective grouping analyses and offense level.

---

[4] However, he later chose not to do so, at sentencing nor on direct appeal.

Moreover, there is no ambiguity in the plea agreement such that it should be construed against the Government. The agreement is specific as to what was being stipulated, and it was clear about the rights of the parties as to facts or legal conclusions which were not stipulated. The plea agreement provides that "[t]o the extent that the parties do not stipulate to a particular fact or legal conclusion, each reserves the right to argue the existence of and the effect of any such fact or conclusion upon the sentence." DePack testified that he read through the agreement with his attorney and understood it, and he was aware of the Government's position, when he and his counsel successfully negotiated to remove the "grouping" stipulation from the stipulations in a prior plea agreement so that each side could, if they chose, advocate a different position on grouping. In addition, DePack was on notice of the grouping position when he relied on a prior version of the plea agreement containing this position during his motion to withdraw his guilty plea. Thus, the Government's conduct is not inconsistent with what DePack reasonably believed when entering his guilty plea.

The Government did not breach the plea agreement and there was no legal basis for DePack's counsel to argue that the prosecution had breached the plea agreement in its position on "grouping." Accordingly, DePack's counsel was not deficient nor ineffective by not arguing that the prosecutors were in breach of the plea agreement.

*VI. Court Appointed Counsel*

Under 28 U.S.C. § 2255 and 18 U.S.C. § 3006A(a)(2)(B),[5] the Court has the discretion to appoint a third new counsel for DePack on his § 2255 motion. However, DePack was more than adequately able to raise the issues made in his petition, and pursuant to 18 U.S.C. § 3006A(a)(2)(B), it does not appear that the interests of justice require an appointment of counsel.

As stated in Reese v. Fulcomer:

> [T]he district court must first decide if the petitioner has presented a nonfrivolous claim and if the appointment of counsel will benefit the petitioner and the court. Factors influencing a court's decision include the complexity of the factual and legal issues in the case, as well as the pro se petitioner's ability to investigate facts and present claims. Courts have held, for example, that there was no abuse of a district court's discretion in failing to appoint counsel when no evidentiary hearing was required and the issues in the case had been narrowed, or the issues were "straightforward and capable of resolution on the record," or the petitioner had "a good understanding of the issues and the ability to present forcefully and coherently his contentions."

946 F.2d 247, 263-64 (3d Cir. 1991), superseded on other grounds by statute, 28 U.S.C. § 2254(d) (citations omitted).

DePack has presented no nonfrivolous claims; the appointment of counsel would neither benefit DePack nor the Court; the issues here are relatively straightforward and capable of resolution on the record and would not benefit from an evidentiary hearing.[6] DePack has clearly

---

[5] 18 U.S.C. § 3006A concerns the manner in which federal district courts provide representation for indigent habeas petitioners. Subsection (a)(2)(B) provides that: "Whenever ... the court determines that the interests of justice so require, representation may be provided for any financially eligible person who ... is seeking relief under section 2241, 2254, or 2255 of title 28."

[6] The motion, files and records of the case show conclusively that the movant is not entitled to relief. United States v. Day, 969 F.2d at 41-42.

exhibited a "good understanding of the issues," as shown by his ability to identify each of his claims and to find case-law and other evidence to support his assertions.

## IV.     Conclusion

For the aforementioned reasons, the Court denies DePack's petition under 28 U.S.C. § 2255.  An appropriate Order will issue.

/s/ Faith S. Hochberg
**Hon. Faith S. Hochberg, U.S.D.J.**